UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Honorable Patty Shwartz**  U.S. Post Office & Courthouse Bldg.
**United States Magistrate Judge**  Federal Square, Newark, NJ  07101

August 5, 2005

## LETTER OPINION

William R. Lundstein, Esq.  Robert J. Gilson, Esq.
Decotiis, Fitzpatrick & Gluck, Esqs.  Riker, Danzig, Scherer, Hyland & Perretti
Glenpoint Centre West  Headquarters Plaza
500 Frank W. Burr Boulevard  One Speedwell avenue
Teaneck, New Jersey 07666  P.O. Box 1981
 Morristown, New Jersey 07962-1981

Theodore S. Smith, Esq.
Drinker, Biddle & Shanley, LLP  Virginia M. Barrett, Esq.
500 Campus Drive  Barrett, Lazar & Lincoln, LLC
Florham Park, New Jersey 07932-1047  145 West Passaic Street
 Maywood, New Jersey 07607

Andrew J. Carlowicz, Jr., Esq.
Hoagland, Longo, Moran, Dunst &
Doukas, Esqs.
40 Paterson Street
P.O. Box 480
New Brunswick, New Jersey 08903

RE:   The Joint Meeting of Essex and Union Counties v. Parsons Engineering
         Science, Inc. and Atlas Stord, Inc. v. Parsons Engineering Science, Inc.
         Civil Action No. 02-5116 (KSH)

Dear Counsel:

This matter is before the Court on the motion of Parsons Engineering Science for "reconsideration" of the sanction imposed pursuant to the Order of July 7, 2005.  In the alternative, Parsons seek leave to "more fully develop the record" to support a request to bar the other testimony that is based upon observations of the facility in operation or more proximate testing of samples of the product.  Parsons also seeks clarification of the July 7, 2005 Order to determine if it also barred Stord's use of Dr. Carson's testimony and confirmation that Joint Meeting bears the burden of proving that the analysis Jenike & Johanson laboratories ("J&J") performed cannot be replicated using existing samples.  For the reasons set forth below, the

1

motion for reconsideration and request for clarification are denied.

## PROCEDURAL HISTORY AND RELEVANT FACTS

The Court incorporates by reference its Opinion and Order dated July 7, 2005. Suffice it to say, the Court denied the request to order Joint Meeting to restart the Sludge Drying Facility but found that its shutdown of the facility without notice to the litigants in this case constituted spoliation and the Court imposed a sanction geared toward leveling the playing field, namely, that if the J&J tests referred to in Dr. Carson's March 2005 expert report could not be replicated using existing pellets, then testimony about the topic would be barred.

On July 18, 2005, Parsons filed the present motion and has argued that the Court's sanction should apply to (1) any testimony offered by Dr. Carson, including testimony based upon his activities during the remediation, and (2) the testimony of Syngro representatives Cal Miller and Robert McCue. Alternatively, Parsons asks the Court to reopen the hearings to allow for a further development of the record regarding sanctions. Parsons did not explain how the record was deficient or what it would seek to offer, but presumably Parsons is asserting that all observations and testing of the facility should be barred because the facility is inactive. Parsons also asserts that the Court should make clear that its sanction applies to Stord and Joint Meeting and that Joint Meeting should be required to prove that the samples can be used to replicate tests that Dr. Carson performed.

In opposition, Joint Meeting and Stord argue that the standard for reconsideration has not been met and the motion should be denied. Moreover, both argue that Dr. Carson made observations and performed analysis as part of his efforts during the remediation and he is being offered as a fact witness to testify about these activities. They assert that to bar this testimony would be an over broad sanction and would be without basis. Stord specifically argues that there is no reason to bar Dr. Carson from testifying as a fact witness regarding work, observations, testing, and analysis that he performed during the remediation project, which was relied upon to make modifications or resolve issues with Joint Meeting before the federal litigation was instituted. Both Stord and Joint Meeting also argue that Dr. Carson analyzed the pellets in the archives that have been available to Parsons and that Parsons has had access to Dr. Carson's Acceptance Testing Report and the four volume appendix since 2002. See Affidavit of Theodore Smith, dated July 26, 2005, at ¶¶ 17-20. Stord further notes that Dr. Carson has been identified as a fact witness since the inception of the federal case. See id. at Exhibit I. Thus, according to Stord, Parsons has been on notice of the factual information that Dr. Carson has gathered for more than three years and to bar his testimony would be extremely prejudicial and would violate due process.

Stord also argues that it is presenting Dr. Carson's expert opinions about "the errors and omissions in Parsons design that Stord had to overcome and rectify in order to achieve compliance with Contract 900." Id. at ¶ 3. For this reason, the marketability of the pellet is not

2

relevant to Stord's claims against Parsons.

Finally, Stord argues that as the sanction does not take effect until there is a showing that the J&J testing cannot be replicated, and any application about it is premature. In any event, Joint Meeting argues that (a) Dr. Carson's expert testing involved the pellets from the same archive that is available to Parsons and therefore he has not had materials available to him that have been unavailable to Parsons, see Certification of Stephen Dohwan, dated July 26, 2005 at 7, (b) the pellets that are currently available are in substantially the same condition as they were when they were first produced, see id. at 13, and ©) Parsons bears the burden of showing that the tests cannot be replicated since it sought the relief of a restart or a sanction.

DISCUSSION

Motions for Reconsideration (a.k.a. Motion for Reargument)[1] are governed by Local Civil Rule 7.1(g). The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see also Shoenfeld Asset Mgt. v. Cendent Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001), Yurecko v. Port Auth. Trans-Hudson, Civ. A. No. 99-5458, 2003 WL 22001196, at * 2 (D.N.J. Aug. 18, 2003). Motions for reconsideration require that the moving party set forth "concisely the matters or controlling decision which counsel believes the [Court] has overlooked," and that the party seeking reconsideration "show more than a disagreement with the Court's decision." G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). Stated differently, "a mere 'recapitulation of the cases and arguments considered by the court before rendering its original decision'" does not warrant reargument. See Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting Carteret Savs. Bank F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989)).

Thus, a court may grant a properly filed motion for reconsideration for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error or law or prevent manifest injustice. See Database America v. Bellsouth Adver. & Publ'g, 825 F. Supp. 1216, 1220 (D.N.J. 1993). A motion for reconsideration is improper when it is used "to ask the Court to rethink what it had already thought through -- rightly or wrongly." See Ciba-Geigy Corp. v. Alza Corp., No. CIV.A.91-5286, 1993 WL 90412, at *1 (D.N.J. March 25, 1993); Oritani Sav. & Loan v. Fid. & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990), rev'd on other grounds, 989 F.2d 635 (3d Cir. 1993). Because reconsideration of a judgment after its entry is an extraordinary remedy, motions to reconsider or reargue are granted "very sparingly," Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986) and disagreement with the Court's initial decision as the basis for bringing a motion "should be dealt within the normal appellate

---

[1] Local Civil Rule 7.1, comment 6(a); see, e.g., Hernand v. Beeler, 129 F. Supp. 2d 698, 701 (D.N.J. 2001) (noting that the terms reargument and reconsideration are used interchangeably and that Rule 7.1(g) governs both).

process, not on a motion for reargument."  <u>Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.</u>, 680 F. Supp. 159, 163 (D.N.J. 1988).

There is no argument that the controlling law has changed and Parsons does not assert that the Court overlooked facts that had been presented to it.  Rather, Parsons appears to be using this motion to ask the Court to expand its sanction to cover materials not presented to it.  Parsons attempts to justify its failure to have presented all of the evidence it would seek to bar based upon the Court's decision to strike a reply letter in which it requested the sanction of an adverse instruction and the Court's statement at the outset of the hearing that the hearing would address only the inspection issue.  As the parties may recall, the third-party defendants indicated that they had no position with respect to the inspection application but did have issues concerning scheduling and the motion for summary judgment.  The third-party defendants wanted to know if these issues would be addressed so that they could determine if they needed to be present for the hearings.  The Court confirmed that it would only address the inspection issue during the hearings, meaning that it would not be dealing with issues of scheduling or other disputes.  This limitation, however, was not meant to convey that the Court would not be considering sanctions for a discovery violation.  Indeed, Parsons acknowledges in its brief that the issue of sanctions was raised during the hearing.  Furthermore, the record reflects inquiries not only about the need and cost of any restart but whether or not Joint Meeting ever disclosed to the litigants in this case that it intended to shut the facility down and that there was a delay in disclosing the fact of the shut down.  Surely that evidence was brought to the Court's attention to demonstrate that Joint Meeting did not fulfill its discovery obligations and that consequences should follow.

Parsons has not identified facts that were presented that were overlooked nor has it brought to the Court's attention facts not available to it during the hearings that it would have presented.  Furthermore, although Parsons argues that the record regarding sanctions for spoliation "ha[s] not been fully developed," it has not explained what additional record evidence needs to be adduced.  Rather, Parsons simply states that Dr. Carson generated numerous reports based upon his observations of the facility during the remediation period and that testimony related to these reports should be barred or "reconsideration should be allowed to permit Parsons to more fully develop the record as to those other reports."  Letter of Stuart Lederman, dated July 18, 2005, at 3-4.  It appears that what Parsons wants to do is explain why the contents of these reports and testimony about them should be barred as a sanction for spoliation.

It could be argued that Parsons is improperly attempting to introduce, by way of motion for reconsideration, evidence in its possession at the time of the hearing, namely the Carson remediation and Syngro reports.  The Court has concluded, however,  that even if Parsons had made a timely request to bar Dr. Carsons' remediation or Syngro reports as part of a sanction, such a request would be denied based upon the record that has been developed and the discovery violation that has occurred.  First, the dispute about restarting the facility arose because Parsons asserted that its experts had been deprived an opportunity to inspect the facility while it was operating and this impeded its ability to lodge a defense.  The Court has already concluded that a restart would not change its experts' opinions and that Parsons' designees had observed the

4

facility in operation numerous times. Furthermore, Parsons and its experts have had access to the data that the plaintiffs collected. While the Court did not have all six reports that Dr. Carson generated during the remediation period, the Court, like Parsons, was aware at the time of the hearings that Dr. Carson played a role in the remediation process. Specifically, evidence was presented regarding the data that was collected during the remediation, that Stord relied upon it in making corrections and addressing issues that Joint Meeting had raised, and that this information was available to Parsons. Moreover, the state court judge entered an order granting Parsons access to the facility. The Court incorporates by reference all of its findings regarding Parsons' access to the facility, data, and the timing and the impact of the shutdown on Parsons' ability to defend itself. There is no new evidence needed to determine the scope of the sanction for the spoliation or if the sanction should apply to Dr. Carsons' remediation reports.

Second, there is no basis to bar fact witness testimony, such as Dr. Carson's, because the facility is now inoperable. Parsons is asking the Court to bar a fact witness' testimony about what was done to correct the alleged problems at the facility before this federal litigation began. This sanction would be improper given when the spoliation occurred, all of the evidence regarding the facility that has been available to Parsons, and the tailored sanction that has been imposed. The spoliation occurred when the facility was closed during this lawsuit and the sanction must fit that conduct. For all of these reasons, the Court will not extend the sanction to bar the reports and testimony of Dr. Carson as a fact witness regarding his work, observations, testing, and analysis during the remediation period.

To the extent Parsons seeks to bar the testimony of Syngro representatives Cal Miller and Robert McCue, the Court declines to do so. First, at the outset of the hearings, the Court asked the parties if any expert was going to offer opinions based upon their observations of the facility while it was operating. The only expert identified was Dr. Carson. Parsons has presented no reason why it did not identify Messrs. Miller and McCue at that time. A party cannot argue that the Court overlooked something when it was not brought to the Court's attention and, hence, this cannot serve as a basis for reconsideration. Second, the Court has already found that Parsons has had ample opportunity to observe the facility while it was operating and, therefore, the "playing field" is not uneven in this regard. Third, it appears that the Syngro report was prepared based upon a review of documents and DVDs depicting applications of the product, which have been available to all parties, and testing of the product. Certification of Craig T. Moran, Esq., dated July 18, 2005, Exhibit E (Syngro Report, Attachment 2). It further appears that samples were evaluated in January 2001, before the federal lawsuit was filed and that the testing was done in furtherance of the remediation, not this lawsuit. Id. at Exhibit E, Syngro Report, Section 2. Fourth, to the extent the Syngro report makes reference to an analysis of the samples, there is nothing before the Court to suggest that Parsons has been without a means to also examine the samples. Fifth, and relatedly, the Syngro Report states that samples were also examined in March 2005 and Syngro has relied upon those results. Parsons has yet to show that it cannot also perform the same analysis. For these reasons, the Court will not extend its ruling to the Syngro Report.

     As to the request for clarification that Stord should also be precluded from introducing the J&J testing described in Dr. Carson's March 2005, such request is moot.  Stord stated that it does not intend to offer this portion of the report as part of its case because it is not addressing issues concerning the marketability of the product.  Thus, it not be seeking to offer evidence that Joint Meeting may be precluded from offering.  Therefore, there is no need to extend the preclusion order to Stord.

     Finally, as to the burden of proof, Parsons claims that Joint Meeting should bear the burden of establishing the condition of the samples.  The Court notes that Parsons has not even taken advantage of the samples to determine if they were useful.  Moreover, Joint Meeting has submitted the Certification of Stephen Dohwan, which states that Dr. Carson used the samples from the same archives that are available to Parsons and the tests demonstrate that the PDI results and the condition of the pellets were "substantially identical to the condition of the pellets at the time of production."  Certification of Stephen Dohwan, dated July 26, 2005, at 13.  Thus, even assuming Joint Meeting bears the burden, the record demonstrates that it has met its burden with respect to PDI and the condition of the pellets and now, if Parsons wants to bar the use of the J&J results, Parsons must show that they cannot replicate the J&J tests with the existing pellets.

## CONCLUSION

     For all of these reasons, the motion for reconsideration and the request to clarify the July 7, 2005 Order is denied.  Moreover, to obtain preclusion under the July 7, 2005 Order, Parsons now bears the burden of proving that the analysis J&J performed cannot be replicated using the existing samples.

                            SO ORDERED.

                            s/Patty Shwartz
                            UNITED STATES MAGISTRATE JUDGE